William R. PHILLIPS,
Petitioner-Appellant,

v.

Harold J. SMITH, Superintendent,
Attica Correctional Facility,
Respondent-Appellee.

No. 1199, Docket 82–2375.

United States Court of Appeals,
Second Circuit.

Argued June 9, 1983.

Decided Sept. 2, 1983.

Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1287.

 

William M. Kunstler, Center for Constitutional Rights, New York City (Mark B. Gombiner, Center for Constitutional Rights, New York City, of counsel), for petitioner-appellant.

Robert M. Pitler, Asst. Dist. Atty., N.Y. County, New York City (Robert M. Morgenthau, Dist. Atty. for N.Y. County, David H. Steiner, Asst. Dist. Atty., N.Y. County, New York City, of counsel), for respondent-appellee.

Before OAKES and MESKILL, Circuit Judges, and HILL,* District Judge.

MESKILL, Circuit Judge:

In 1974 William R. Phillips was tried and convicted in New York State Supreme Court of two counts of murder and one count of attempted murder. In 1978 he moved to vacate the judgment in state court alleging that his Fifth and Sixth Amendment rights were violated by the admission at trial of allegedly immunized testimony. The state judge denied his motion ruling alternatively that Phillips' claim of immunity was not timely made and that, in any event, the error was harmless. The United States District Court for the Southern District of New York, Gagliardi, J., denied habeas relief based on the procedural default rule of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *Phillips v. Smith*, 552 F.Supp. 653 (S.D.N.Y. 1982).

Affirmed.

## BACKGROUND

William R. Phillips was a New York City police officer when, in 1971, he agreed to cooperate with the Knapp Commission's investigation into police corruption. In return, the United States Attorney for the Southern District of New York allegedly agreed to grant Phillips full transactional immunity for all matters which he might disclose. Later that year Phillips testified at televised hearings conducted by the Commission. A detective watching those hearings noted a resemblance between Phillips and composite sketches of a suspect in the 1968 murders of Jimmy Smith, a pimp and bookmaker, and Sharon Stango, a prostitute. Soon thereafter, several of Smith's ex-prostitutes and customers identified Phillips as having been acquainted with Smith. Among them was Charles Gonzalez, an eyewitness to the Smith/Stango murders who had also been shot by the suspect.

Phillips was charged by a New York County grand jury with the Smith/Stango murders and the attempted murder of Gonzalez. His first trial in 1972 ended in a hung jury, 10–2 for acquittal. His second trial began in 1974 in the New York State Supreme Court. During the nine week trial, several witnesses testified that Phillips had been extorting money from Smith for many years prior to 1968 and that shortly before the murders Phillips had threatened to "blow Smith's . . . head off" if he did not

* Honorable Irving Hill, United States District Judge for the Central District of California, sitting by designation.

pay him $1,000. Gonzalez identified Phillips as the man who shot him, Smith and Stango.

Phillips took the stand, denied having committed the murders and offered an alibi defense. He insisted that he had not extorted money from Smith or visited him since the close of the 1965 college football season. On cross-examination, the government introduced a tape recording made in connection with the Knapp Commission investigation in which Phillips admitted to extorting $100 monthly from Smith after 1965. The defense objected on the ground that it had not been afforded a prior opportunity to hear the entire tape. The court admitted the recorded testimony, but ruled that the defense could challenge the integrity of the recording. The jury found Phillips guilty of the Smith/Stango murders and the attempted murder of Gonzalez.

Phillips moved to vacate the verdict on the ground of jury bias because one of the jurors had a job application pending with the District Attorney's office. This motion was denied and Phillips was sentenced to concurrent terms of 20 and 25 years to life for the murders and 8⅓ to 25 years for the attempted murder, *People v. Phillips,* 87 Misc.2d 613, 384 N.Y.S.2d 906 (Sup.Ct.1975). The Appellate Division affirmed without opinion, *People v. Phillips,* 52 A.D.2d 758, 384 N.Y.S.2d 715 (1976), and leave to appeal to the Court of Appeals was denied, *People v. Phillips,* 39 N.Y.2d 949, 386 N.Y.S.2d 1039, 352 N.E.2d 894 (1976).

Two years later, in 1978, Phillips moved in state court pursuant to N.Y.Crim. Proc.Law § 440.10 (McKinney 1971) to vacate his conviction claiming, for the first time, that his recorded testimony introduced at the second trial was covered by transactional immunity allegedly granted by the United States Attorney in connection with the Knapp Commission investigation. The state court denied the motion because Phillips had failed timely to raise his immunity claim in accordance with the New York Criminal Procedure Law. Even if his claim had been timely raised, the court questioned whether a United States

Attorney could lawfully immunize Phillips from state prosecution and noted that, in any event, the recording was lawfully used for impeachment purposes. *People v. Phillips,* 97 Misc.2d 665, 412 N.Y.S.2d 94 (Sup. Ct.1979). Leave to appeal was denied. On Phillips' motion for reargument, the court held:

> This court denied [Phillips'] motion to vacate on the grounds that his claims of immunity were not timely raised. The court also held, *as an alternative ground,* that even if defendant had been granted immunity, his recorded testimony was admissible because it was used to impeach him when he took the stand at trial.
>
> Since this court's decision, the Supreme Court of the United States has held, in *State of New Jersey v. Portash,* [440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1978)] that testimony for which a grant of use immunity is given cannot subsequently be [used] to impeach a witness at trial. Defendant now moves for reargument of his motion to vacate on the grounds that the *Portash* decision invalidates this court's denial of his motion.
>
> Defendant's motion to reargue is granted, to the extent that this court acknowledges that the *Portash* decision prohibits immunized testimony from being used to impeach a witness at trial. *However, the major thrust of this court's decision in its denial of defendant's motion to vacate was that the defendant's claims of immunity were not timely made.* This holding is unaffected by *Portash.* The court therefore adheres to its original order denying defendant's motion to vacate. *Moreover, the court finds that given the evidence of defendant's guilt, the use of his recorded testimony was harmless error beyond a reasonable doubt.*

Br. of Appellee, App. at 2–3 (emphasis added).

Phillips then filed this petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. Judge Pierce granted the writ on the ground of juror bias, *Phillips v.*

*Smith,* 485 F.Supp. 1365 (S.D.N.Y.1980), but he did not reach the immunity issue. We affirmed, 632 F.2d 1019 (2d Cir.1980), but the Supreme Court reversed and remanded for consideration of Phillips' immunity claim. *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

On remand, Judge Gagliardi found that Phillips had forfeited federal habeas review of his immunity claim due to his procedural default. *Phillips v. Smith,* 552 F.Supp. 653, 656–57 (S.D.N.Y.1982). Finding that Phillips had failed to show cause for his failure to timely raise his immunity claim, Judge Gagliardi denied the petition. Phillips brings this appeal.

## DISCUSSION

■ In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that a defendant who fails to comply with state rules of procedure governing the timely presentation of federal constitutional claims forfeits his right to federal habeas review of those claims unless he can show "cause for the noncompliance [with state procedure] and some showing of actual prejudice resulting from the alleged constitutional violation." *Id.* at 84, 97 S.Ct. at 2505. Since *Wainwright v. Sykes,* many federal habeas courts have grappled with the procedural default rule. Where the state court has held that the petitioner forfeited his federal constitutional claim due to a procedural default, the cause and prejudice analysis plainly applies. *Engle v. Isaac,* 456 U.S. 107, 124–29, 102 S.Ct. 1558, 1570–72, 71 L.Ed.2d 783 (1982). However, where the state court does not rely on a procedural default but instead reaches and decides the merits of a federal constitutional claim, federal habeas review is available without having to show cause and prejudice. *See, e.g., Klein v. Harris,* 667 F.2d 274, 285–86 (2d Cir.1981); *Thomas v. Blackburn,* 623 F.2d 383, 386 (5th Cir.1980), *cert. denied,* 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981).

In this case, the state court held that Phillips had forfeited his constitutional immunity claim because it had not been timely raised. But, the state court also rejected Phillips' immunity claim on its merits. The state court held in the alternative. Phillips argues that where the state court reaches the merits of a federal constitutional claim despite a procedural default, the cause and prejudice test of *Wainwright v. Sykes* does not apply. The state responds that an alternative procedural holding provides an adequate and independent state ground for decision having the same preclusive effect under *Wainwright v. Sykes* as a procedural holding that stands alone. Thus, the issue presented is whether a federal habeas court must apply the cause and prejudice analysis where the state court denied post-judgment relief relying alternatively on procedural grounds and on the merits of the federal constitutional claim. This question is one of first impression in this Circuit although it has been addressed in other circuits with divided results.

On one side of the question are the Fifth, Ninth and Eleventh Circuits. Each of these courts believes that *Wainwright v. Sykes* does not bar federal habeas review of federal constitutional claims unless the state court relied exclusively or solely on the petitioner's procedural default. *See, e.g., Darden v. Wainwright,* 699 F.2d 1031, 1034 (11th Cir.1983); *Lowery v. Estelle,* 696 F.2d 333, 342 n. 28 (5th Cir.1983); *Rogers v. McMullen,* 673 F.2d 1185, 1188 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 740, 74 L.Ed.2d 961 (1983); *Thompson v. Estelle,* 642 F.2d 996, 998 (5th Cir.1981); *Bradford v. Stone,* 594 F.2d 1294, 1296 n. 2 (9th Cir.1979); *see also* Bagwell, *Procedural Aspects of Prisoner § 1983 and § 2254 Cases in the Fifth and Eleventh Circuits,* 95 F.R.D. 435, 457 & n. 138 (1982) ("If there has been a failure to comply with a state procedural rule but the state elects to consider the federal claim on the merits *anyway,* the federal court in the later habeas case will also reach the merits ....").

On the other side of the question are the Third and Seventh Circuits which hold that the cause and prejudice analysis applies whenever the state court expressly relied on an adequate and independent state proce-

dural ground. *See, e.g., United States ex rel. Veal v. DeRobertis,* 693 F.2d 642, 650 (7th Cir.1982); *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 440 (3d Cir.1982). The Sixth and Eighth Circuits employ a more flexible standard, applying the procedural default rule of *Wainwright v. Sykes* only where the state court relied primarily on the procedural ground. *See, e.g., Dietz v. Solem,* 640 F.2d 126, 131–32 & n. 1 (8th Cir.1981); *Hockenbury v. Sowders,* 620 F.2d 111, 115 (6th Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981).

The district court found most persuasive the Third Circuit's decision in *United States ex rel. Caruso v. Zelinsky,* which held that "state court reliance on a procedural rule as an alternate holding suffices to implicate the procedural default doctrine." 689 F.2d at 440. Judge Gagliardi reasoned that despite the state court's discussion of the merits of Phillips' immunity claim, a procedural default is a procedural default no matter what language surrounds it and the principles underlying the *Wainwright v. Sykes* cause and prejudice analysis require that a federal court give effect to state court judgments that rest on adequate and independent state procedural grounds.

█ We agree and hold that explicit state court reliance on a procedural default bars federal habeas review of the forfeited claim absent a showing of cause and prejudice regardless of whether the state court ruled alternatively on the merits of the forfeited claim. We adopt this rule because it (1) is more consistent with the policies underlying the procedural default rule of *Wainwright v. Sykes;* (2) is more consistent with the greater weight of courts of appeals decisions; (3) is more consistent with related decisions of this Court and the Supreme Court; and (4) is more logical than the rule advanced by Phillips.

Because the circuits are divided and because there is no controlling precedent from the Supreme Court or from this Court, our inquiry begins with the policies underlying the procedural default rule of *Wainwright v. Sykes. See United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 441–42 (3d Cir.

1982); *Forman v. Smith,* 633 F.2d 634, 639 (2d Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981). In *Sykes,* the Supreme Court was concerned with comity. Acknowledging the "well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts," 433 U.S. at 81, 97 S.Ct. at 2503, the Court reasoned that state procedural rules designed to ensure error-free state adjudication are desirable and should be respected by the federal courts, *id.* at 90, 97 S.Ct. at 2508. The Supreme Court was also concerned with finality. It recognized that if federal courts were free to review the federal constitutional claims of state defendants despite a procedural default, "defense lawyers . . . may take their chances on a verdict of not guilty in a state trial court with the intent to raise their constitutional claims in a federal habeas court if their initial gamble does not pay off." *Id.* at 89, 97 S.Ct. at 2507. The Court also recognized that by giving effect to state procedural rules designed to preserve the trial as "a decisive and portentous event," the procedural default standard helped to ensure the integrity of the trial and the accuracy of the verdict. *Id.* at 90, 97 S.Ct. at 2508. The Court adopted the cause and prejudice exception to safeguard against a miscarriage of justice. *Id.* at 91, 97 S.Ct. at 2508.

Both Phillips and the state argue that their position will best advance the goals of comity, finality, accuracy and trial integrity. Phillips contends that comity does not require a federal habeas court to give effect to a state procedural rule if the state court fails to do so. In his view, if the state court elects to address the merits of a defendant's federal constitutional claim despite his procedural default, a federal habeas court can do likewise without disrespect for comity. This is because when a state court *invites* federal intervention by ruling on the merits of federal constitutional issues despite a procedural default, it manifests a judgment that the state's interest in resolving the

constitutional question outweighs its interest in finality, accuracy and trial integrity.

The state, of course, interprets *Wainwright v. Sykes* differently. In its view, the goals of finality, accuracy and trial integrity are best served when state courts are free to dispose of all issues without having to fear federal habeas intervention. The state argues that an alternative disposition on the merits does not undermine the validity, adequacy or independence of the procedural ground.

■ We believe that the state is correct. Comity requires that federal courts respect state procedural rules to the extent those rules do not unjustly extinguish rights guaranteed by the federal Constitution. *Engle v. Isaac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982) ("Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."). Thus, if the state court relied on an adequate and independent state procedural ground, federal habeas review is unavailable absent a showing of cause and prejudice. The same respect is due when the state court rules alternatively on the merits. We need not worry that state courts will sacrifice federal constitutional rights under the guise of a procedural default because the cause and prejudice test allows for federal habeas review, despite a procedural default, to prevent a fundamental miscarriage of justice.

The rule advanced by Phillips also runs counter to the goals of finality, accuracy and trial integrity. He asks that we ignore the effect of his noncompliance with New York procedural law because the state court reached the merits of his immunity claim. The state court did not ignore his procedural default, but rather stated explicitly that Phillips had forfeited his immunity claim. With this holding, the state court fully and finally disposed of the issue and clearly demonstrated the importance it attaches to the goals of finality, accuracy and trial integrity. We will not penalize the state court for addressing the merits in the alternative, particularly when it may have done so in order to provide an alternative basis for affirmance in the event the procedural ruling is reversed. Rather than encouraging adjudication of all issues in as few proceedings as possible, Phillips' position would prolong and fragment the full and final disposition of state criminal cases. *See United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 442 (3d Cir.1982). We will not abet this result.

It is for these same reasons that a majority of courts of appeals addressing this issue have concluded that the cause and prejudice analysis applies whenever the state court relied on a procedural default. *See United States ex rel. Veal v. DeRobertis,* 693 F.2d 642, 650 (7th Cir.1982); *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 440 (3d Cir.1982); *Dietz v. Solem,* 640 F.2d 126, 131–32 & n. 1 (8th Cir.1981); *Hockenbury v. Sowders,* 620 F.2d 111, 115 (6th Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 2011, 68 L.Ed.2d 320 (1981). A careful and persuasive analysis of the question at bar is the Third Circuit's decision in *United States ex rel. Caruso v. Zelinsky.* There the state appellate court denied post-conviction relief both on the merits and on procedural grounds. Its opinion did not indicate the primary basis of the decision: "Despite the procedural bars to the bringing of this petition, we have nevertheless elected to consider this appeal on the merits and we are satisfied that each of the substantive issues raised is clearly without merit." 689 F.2d at 439. The district court granted habeas relief, but the Third Circuit reversed. Writing for the court, Chief Judge Seitz noted that "an alternate holding has the same force as a single holding; it is binding precedent." Consequently, "state court reliance on a procedural rule as an alternate holding suffices to implicate the procedural default doctrine." *Id.* at 440. The district court relied on Chief Judge Seitz's analysis; so do we.

Although the Fifth, Eleventh and Ninth Circuits support Phillips' position, we find their opinions to be less persuasive. The Ninth Circuit in *Bradford v. Stone,* 594 F.2d

1294 (9th Cir.1979), chose "to *assume* [that] the state's failure to rest exclusively upon procedural default permits us to reach the federal question." *Id.* at 1296 n. 2 (emphasis added). The Eleventh Circuit [1] in *Darden v. Wainwright,* 699 F.2d 1031 (11th Cir.1983), noted that the state court decision under review had as its "primary basis" a ruling on the merits; the state court's one paragraph discussion of the procedural default followed a multi-page analysis of the merits. *Id.* at 1034 n. 4. We recognize that the Fifth Circuit's decision in *Thompson v. Estelle,* 642 F.2d 996 (5th Cir.1981), squarely supports Phillips' position that a state court must rely *exclusively* on a procedural default to preclude federal habeas review under *Wainwright v. Sykes. See Lowery v. Estelle,* 696 F.2d 333, 342 n. 28 (5th Cir.1983). But, for the reasons detailed in this opinion we reject the Fifth Circuit's holding.

The state court in this case denied Phillips' application for post-judgment relief primarily because he had failed timely to raise his immunity claim. *Cf. Hearn v. Mintzes,* 708 F.2d 1072, 1076 (6th Cir.1983) (federal courts must "discern and accept the

foundation for state decisions when that foundation is apparent in the state judgment"). In his original opinion and his opinion on reargument, Justice Lang of the New York Supreme Court expressly held that Phillips had forfeited his immunity claim and in his latter opinion he emphasized that the "major thrust of this court's decision ... was that the defendant's claims of immunity were not timely made." Br. of Appellee, App. at 2. The adequacy, independence and primacy of the state court's holding on procedural grounds is "apparent from the four corners of the opinion." *Michigan v. Long,* —— U.S. ——, —— – ——, 103 S.Ct. 3469, 3474–76, 77 L.Ed.2d 1201 (1983).[2] We will not interfere.

Even if Judge Lang had not expressly stated that the "major thrust" of his decision was Phillips' procedural default, our decision would be the same. The Supreme Court in *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and this Court in *Martinez v. Harris,* 675 F.2d 51 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 392, 74

---

**1.** The Eleventh Circuit was not free to consider the question at bar as one of first impression. In *Rogers v. McMullen,* 673 F.2d 1185 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 740, 74 L.Ed.2d 961 (1983), the court deemed itself bound by the Fifth Circuit's decision in *Thompson v. Estelle,* 642 F.2d 996 (5th Cir. 1981) (federal habeas review available unless state court relied solely on procedural default), because in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted "as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981." *Rogers v. McMullen,* 673 F.2d at 1188 n. 4.

**2.** In an analogous context, the Supreme Court will decline to review a state court decision that rests on adequate and independent state grounds. "Respect for the independence of state courts, as well as avoidance of rendering advisory opinions, have been the cornerstones of [the] Court's refusal to decide cases where there is an adequate and independent state ground." *Michigan v. Long,* —— U.S. ——, ——, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983). In *Michigan v. Long,* the Supreme Court considered whether it had jurisdiction to

review a state court decision which "referred twice to the state constitution ..., but otherwise relied exclusively on federal law." *Id.* at ——, 103 S.Ct. at 3474. The Court stated that:

> [W]hen, as in this case, a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.

*Id.* at ——, 103 S.Ct. at 3476. But, "[i]f the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision." *Id.*

Our inquiry in this case is similar to the question before the Court in *Michigan v. Long* and we are guided by the Court's analysis in that case. Since Judge Lang clearly and expressly based his decision primarily on Phillips' failure timely to raise his immunity claim, we find that the state court's decision rested on an adequate and independent state procedural ground.

L.Ed.2d 521 (1982), have indicated without deciding that federal habeas courts should search for and respect state adjudications of procedural default. In *Ulster County,* the Supreme Court embarked on a lengthy examination of the record and New York law to ascertain the basis of an ambiguous state court decision denying post-verdict relief. The Court engaged in this analysis even though the state court explicitly, albeit summarily, decided the federal constitutional claim on the merits and even though it was unclear that a procedural default was involved. *Id.* at 147–54, 99 S.Ct. at 2219–23. Although the Supreme Court concluded that the state court had decided on the merits, its decision in *Ulster County* suggests that federal habeas courts should avoid entertaining claims that have been forfeited under state law. In *Martinez v. Harris,* we held that where a state court affirms a conviction without opinion, its decision rests on an adequate state procedural ground if the state had argued both meritorious procedural and substantive grounds for affirmance. Our decision to presume that silence by a state court evinces an intent to rely on an adequate state procedural ground reflects respect for state procedural rules designed to require contemporaneous objections. There is no reason for us to pay less respect to state rules of procedure where the state court *explicitly* holds that a federal constitutional claim is barred by a state procedural rule. *See County Court of Ulster County v. Allen,* 442 U.S. at 154, 99 S.Ct. at 2223.

We recognize the appeal of Phillips' position. He advocates a bright-line test—if the state court addresses the federal question, its decision is open to federal review. However, the appeal sours when the implications are considered. The Third Circuit recognized in *United States ex rel. Caruso v. Zelinsky* that "[t]here may be occasions when the state courts believe that the interests of justice are better served by denying the [petitioner's] arguments for both procedural and substantive reasons." 689 F.2d at 440. However, if state court decisions on the merits of federal constitutional claims are automatically subject to federal habeas review despite an independent and adequate state procedural ground for affirmance, state courts will surely hesitate before evaluating those claims. Because the state court explicitly held that Phillips forfeited his federal constitutional immunity claim due to his failure to comply with state procedural rules, federal habeas review is unavailable unless Phillips can demonstrate cause for his procedural default and prejudice resulting from the alleged constitutional violation.

■ From our examination of the record, we are satisfied that Phillips has failed to show cause for not timely raising his immunity claim. Phillips contends that because neither he nor his attorneys knew during the second trial that his recorded testimony was covered by a grant of immunity, his failure to object to the admission of that testimony should be excused for cause. In addition, Phillips argues cause in that three Assistant United States Attorneys allegedly told him after his involvement with the Commission had ended that he had not been granted immunity when, in fact, he had. The district court ruled without an evidentiary hearing that Phillips had failed to demonstrate cause because "on the basis of petitioner's own submissions both here and in the state courts, ... petitioner had knowledge of at least a colorable claim of immunity prior to the commencement of his trial." *Phillips v. Smith,* 552 F.Supp. 653, 656–57 (S.D.N.Y.1982).

We cannot reconcile Phillips' argument that he lacked sufficient knowledge to inform his counsel of the immunity claim with his own sworn statements establishing just the opposite. Phillips swore in an affidavit accompanying his motion to vacate that he had been advised while working with the Knapp Commission of an agreement between its chief counsel and the United States Attorney for the Southern District of New York under which Phillips was to receive full immunity in exchange for his assistance. In addition, Phillips averred that he agreed to have his testimony recorded "with the understanding that

he had full immunity for any and all statements made concerning his past illegal activities." Michael F. Armstrong, former Chief Counsel of the Knapp Commission, submitted an affidavit accompanying Phillips' motion in which he states that Phillips' cooperation was obtained "on the condition that he would be afforded immunity for matters which he described to the Commission." App. of Appellant at 24. On the basis of these statements, the state court found, the district court agreed and so do we that "long prior to his indictment, the defendant was aware that he had, at least, a colorable claim of immunity." 97 Misc.2d 665, 667, 412 N.Y.S.2d 94, *quoted in,* 552 F.Supp. at 656.

Phillips' additional argument for cause is similarly unavailing. He contends that he failed to raise his immunity claim at trial because three former Assistant United States Attorneys had told him prior to trial that he did not have an immunity claim. Assuming the truth of this allegation,[3] these circumstances do not establish cause for his failure timely to raise the claim because Phillips was aware, despite the alleged misrepresentations, that he had been promised immunity. Because Phillips knew that he had been promised immunity, he has not established cause for his failure timely to raise that claim.

Affirmed.

---

3. The only evidence offered in support of this allegation is a letter dated two years *after* Phillips' trial from one of the former Assistant United States Attorneys connected with the Knapp Commission investigation in which he advises Phillips that "whatever your immunity status, these tapes would be admissable [sic]." App. of Appellant at 35.